ORIGINAL

DAVID J. GIERLACH        5041
500 Ala Moana Boulevard
Suite 330, 5 Waterfront Plaza
Honolulu, Hawaii 96813
Telephone: (808) 523-1332
Facsimile:  (808) 526-2275

EVE M. GREEN              5550
58 Central Avenue
Wailuku, Maui, Hawaii 96793

DAVID A. SERENO           5739
55-B N. Church Street
Wailuku, Maui, Hawaii 96793

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VALERIE GREGORY, Individually and as Special Administrator of the Estate of RICHARD J. GREGORY, Deceased, and as Next Friend of ISREAL GREGORY, a Minor, KEANU GREGORY, a Minor and SHAYLISSE GREGORY, a Minor,<br><br>   Plaintiffs,<br><br> vs.<br><br>COUNTY OF MAUI, MAUI POLICE | CIVIL NO. CV 04 00516 SPK/KSCC<br>[Other Non-Motor Vehicle Tort]<br><br>PLAINTIFFS' CONCISE STATEMENT OF FACTS IN SUPPORT OF THEIR MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; EXHIBITS 1 THROUGH 47; CERTIFICATE OF SERVICE |

[CAPTION CONTINUED]

```
DEPARTMENT, GARRET TIHADA,        )  HEARING:
EDWIN K. AMONG, NICHOLAS E.       )
ANGELL, JOHN DOE OFFICERS 1-      )  DATE:   JANUARY 13, 2006
10, JOHN DOES 1-10, JANE DOES     )  TIME:   10:00 A.M.
1-10, DOE CORPORATIONS 1-10,      )  JUDGE:  SAMUEL. P. KING
DOE PARTNERSHIPS 1-10 AND         )
DOE GOVERNMENTAL ENTITIES         )
1-10,                             )
                                  )
            Defendants.           )
                                  )  TRIAL:  FEBRUARY 14, 2006
_____)
```

PLAINTIFFS' CONCISE STATEMENT OF FACTS
IN SUPPORT OF THEIR MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to LR 56.1 of the *Local Rules of Practice for the United States District Court for the District of Hawaii*, Plaintiffs, by and through their undersigned counsel, submit their concise statement of facts in support of its Memorandum in Opposition to Defendant County of Maui's Motion for Summary Judgment.

| FACTS | EVIDENTIARY SUPPORT |
|---|---|
| Police responded to the call of a trespasser at the music studio, who was freaking out and might be on drugs. | Exhibit 11; Exhibit 12. |
| Police knew that Richard was acting in a strange and bizarre manner. | Exhibit 12; Exhibit 13 at 2. |
| According to Defendant Officers, they heard nothing going on as they approached the studio. | Exhibit 13 at 4; Exhibit 14 at 3; Exhibit 16 at 4. |
| As they entered, they saw Richard drinking from a jug of water. | Exhibit 12; Exhibit 14 at 3; exhibit 16 at 4-5; Exhibit 16. |
| Richard began walking towards the officers at the door and stated "**Oh, I'm glad to see you,**" [emphasis supplied] and that he was a Christian or something like that. | Exhibit 12; Exhibit 14; Exhibit 16 at 5; Exhibit 18. |

| | |
|---|---|
| Officer Tihada describes Richard as holding a jug of water and a yellow pen at the time the officers' approached and asking "why, why" when officers instructed him to put the pen down. Tihada admits that the pen was not being held in a threatening manner. | Exhibit 13 at 5; Exhibit 14 at 4. |
| According to Officer Among, Richard was asked quite a few times to put down the pen. | Exhibit 19. |
| Richard then began ranting and officers grabbed Richard's arm and began struggling with him to take the pen. | Exhibit 12; Exhibit 14 at 4-5; Exhibit 16 at 5. |
| After police began struggling with Richard, Richard responded "what are you doing? I'm a Christian." | Exhibit 14 at 5; Exhibit 20. |
| Officer Tihada described grabbing Richard and taking the pen from his hand. | Exhibit 13 at 6. |
| A struggle then ensued when officers tried to handcuff Richard. | Exhibit 12; Exhibit 13 at 6; exhibit 14 at 4-7; Exhibit 16 at 5. |
| Officer Angell admitted that Richard never tried "to punch or kick me personally" and, to Officer Angell's knowledge, did not attempt to do so to the other officers. | Exhibit 14 at 18. |
| Richard made no threats or derogatory comments to the officers. | Exhibit 13 at 11, 16; Exhibit 14 at 19; Exhibit 21; Exhibit 22. |
| Vinnie Finazzo, one of the renter's of the studio, stated that he was in the studio when police arrived. | Exhibit 23. |
| According to Finazzo, Richard was moving behind the drum set still holding his guitar tuning it as police arrived. | Exhibit 24. |
| Finazzo denies that Richard had anything in his hands as police arrived. | Exhibit 25. |
| As he left the studio to talk to police, Richard moved to the right corner of the room and that as police entered, he and Jackson waited outside. | Exhibit 26. |
| When the police entered Rick started screaming "What are you doing, I'm a good Christian, I'm a family man" about eight times, then he started yelling "police brutality," as the police officers were all telling Rick "calm down, just relax and put your hands behind your back." | Exhibit 20. |

2

| | |
|---|---|
| According to Finazzo, a scuffle occurred immediately after police entered the studio. | Exhibit 27; Exhibit 28. |
| He was amazed that the incident had turned into a "wrestling match." | Exhibit 29. |
| He estimates the scuffle lasted for five to seven minutes. | Exhibit 30. |
| Jason Fuqua, who was also present outside the studio when police entered, specifically denies hearing any police officer say that Gregory had something in his hand. | Exhibit 32. |
| Fuqua estimates the struggle lasted for ten minutes. | Exhibit 33. |
| During the "struggle," Officer Tihada used some type of choke hold on Richard. | Exhibit 13 at 15; Exhibit 34; Exhibit 14 at 14; Exhibit 16 at 6; Exhibit 34. |
| Officer Among describes Tihada and Gregory as falling over the sofa, with Tihada's arm still around Richard's neck in sort of a carotid hold. | Exhibit 16 at 7. |
| Officer Tihada describes pushing Richard's face into the couch by pressing on the back of his neck. | Exhibit 13 at 6. |
| He got his arm around Richard's neck and placed his armpit on the back of Richard's neck, locking his arm down towards Richard's chest. | Exhibit 13 at 7. |
| Officer Tihada then held Richard's face into the couch by pressing on his neck. | Exhibit 13 at 6-7. |
| While Tihada had his arm around Richard's neck and was pressing Richard's face into the couch, Richard complained numerous times of being unable to breathe. | Exhibit 13 at 98; Exhibit 14 at 15. |
| Jason Fuqua, a witness, who was in the studio prior to the arrival of police, reported hearing Richard say "I can't breathe, I can't breathe" to which officers responded "If you can talk you can breathe." | Exhibit 35; Exhibit 36. |
| Tihada admits that he was on top of Richard at this time and that Richard complained of being unable to breathe at least ten times. | Exhibit 13 at 9. |
| Tihada admitted that Richard, despite struggling, was not trying to injure the officers. | Exhibit 13 at 11. |

3

 

| | |
|---|---|
| Tihada describes Richard as standing up and flipping over and landing on the ground. He describes continuing his hold on Richard's neck as this takes place, pressing his forearm into Richard's throat. | Exhibit 13 at 9. |
| Finally Officer Tihada describes placing the cuffs on Richard, turning him over and noticing that Richard's face looked odd and he describes Richards has having stopped moving once the handcuffs were placed. | Exhibit 13 at 13. |
| He describes Richard's face as looking purplish and discolored. | Exhibit 13 at 17. |
| Officer Tihada admits using a hold on Richard, but denies that it was a carotid hold. | Exhibit 13 at 15. |
| After officers noted Richard was unresponsive, they attempted CPR. One officer ran to get a defibulator. | Exhibit 16 at 10; 11; Exhibit 37. |
| Despite resuscitation attempts, Richard Gregory died. | Exhibit 38. |
| After Richard died, Finazzo viewed the studio where the "struggle" occurred. | Exhibit 39. |
| He estimated that the free space in the studio was approximately 5 x 5. | Exhibit 40. |
| Finazzo was surprised that, despite the noise and scuffling he heard, nothing was knocked over and everything was where it had been. | Exhibit 39. |
| Even the music cases piled on the couch where police allegedly struggled with Richard remained as they had been prior to the struggle. | Exhibit 41. |
| An autopsy was performed on Richard by Dr. Anthony Manoukian. | Exhibit 38. |
| Dr. Manoukian described the physiological cause of death as cardiopulmonary arrest. | Exhibit 43 at ¶ 14; Exhibit 44 at ¶ 4. |
| According to Dr. Manoukian, if the struggle had not occurred, Richard Gregory would not have died. | Exhibit 44 at ¶ 6. |
| To a reasonable degree of medical probability, the struggle was a substantial factor in causing the death of Richard Gregory. | Exhibit 45. |

4

| | |
|---|---|
| D.P. Van Blaricom is an expert in police standards of care; restraint asphyxia; internal investigation and discipline. | Exhibit 46 at ¶ 3. |
| Richard displayed the classic symptoms of excited delirium. | Exhibit 46 at ¶ 7(a). |
| Had the officers been properly trained, they would know this and know that Richard was at risk of restraint asphyxia. | Exhibit 46 at ¶ 7(b)(1). |
| Law enforcement policy makers know of the risks of restraint asphyxia, which requires adequate training. | Exhibit 46 at ¶ 6. |
| Richard had symptoms of excited delirium; he was high strung, excitable, rigid, with saucer like eyes and spoke loudly and rapidly. | Exhibit 46 at ¶ 7(a). |
| If the officers were adequately trained, they should know that persons with these symptoms re at increased risk of restraint asphyxia. | Exhibit 46 at ¶ 7(b)(1). |
| If Defendant Officers had been properly trained, they should have calmly approached Richard and not escalated the encounter. | Exhibit 46 at ¶ 7(b)(2). |
| Instead, police were aggressive, guaranteed a struggle and failed to try to defuse the situation. | Exhibit 46 at ¶ 7(b)(2). |
| Richard did not pose a significant threat of death or serious physical injury to anyone. | Exhibit 46 at ¶ (c)(3). |
| Any pen was immediately removed from Richard. | Exhibit 46 at 7(c)(4). |
| The officers forced Richard's face into the couch, using carotid and bar-arm choke holds, both being potentially lethal force. | Exhibit 46 at 7(c)(3) and (5). |
| Tihada had a choke hold on Richard "as hard as [he] could" with his "weight holding him down" despite Richard's cries that he could not breathe. | Exhibit 46 at 7(c)(3) and (5); 7(d). |
| Event though Richard could not breathe, officers continued to use excessive force to restrain him. | Exhibit 46 at 7(d). |
| "It is well understood, by adequately trained law enforcement officers that a person who cannot breathe will increasingly struggle to maintain that essential function of life. | Exhibit 46 at 7(g). |
| "It is objectively unreasonable excessive force per se to actively interfere with respiration until breathing ceases." | Exhibit 46 at 7(i). |

5

DATED: Honolulu, Hawaii, December 21, 2005.

_____
DAVID J. GIERLACH
EVE M. GREEN
DAVID A. SERENO
Attorneys for Plaintiffs