IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| VALERIE GREGORY, individually and as Special Administrator of the Estate of RICHARD J. GREGORY, Deceased, and as next friend of ISREAL GREGORY, a minor, KEANU GREGORY, a minor, KALANI GREGORY, a minor, and SHAYLISSE GREGORY, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MAUI, MAUI POLICE DEPARTMENT, JOHN DOE OFFICERS 1-10, JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, and DOE GOVERNMENTAL ENTITIES 1-10,<br><br>Defendants | CIVIL NO. 03-1-0265(1)<br>(Other Non-motor vehicle tort)<br><br>AFFIDAVIT OF ANTHONY MANOUKIAN, M.D. |

### AFFIDAVIT OF ANTHONY MANOUKIAN, M.D.

STATE OF HAWAII     )
                    ) SS.
COUNTY OF MAUI      )

ANTHONY MANOUKIAN, M.D. being duly sworn upon oath, deposes and says:

1. I am the coroner physician for the County of Maui;

2. I have been in this position since 1993;

3. In my position as a coroner physician, I conduct approximately 250 autopsies per year;

4. As part of my duties I determine the cause of death based upon my education, knowledge, experience and physical findings;

5. I have been qualified as an expert regarding autopsies

EXHIBIT "A"

and cause of death in the Circuit Courts in the State of Hawaii and the United States District Court for the District of Hawaii approximately 50 to 100 times;

6. On December 3, 2002 I performed an autopsy on Richard Joseph Gregory;

7. In forming my opinions as to cause of death, I have relied upon a review of the police report and spoken to the investigating detectives regarding the factual circumstances surrounding the death of Richard Gregory;

8. A review of the police report and informal interview of the detectives are materials which I generally rely upon in order to determine the underlying factual circumstances of a death and is of a type which experts in my field generally rely upon in forming opinions as to cause of death;

9. Based upon my review of the police reports and the informal interview of the detectives, it is my understanding that the Maui Police Department was called when Mr. Gregory refused to leave the premises. Richard Gregory was non-cooperative with police when they arrived and exhibited bizarre behavior with religious ideations. Mr. Gregory became combative as police attempted to subdue him. Mr. Gregory complained of difficulty breathing although he was able to continue vocalizing and struggling. When he was finally handcuffed, and as the officers sat him up, he became suddenly unresponsive;

10. It is my opinion that the cause of death was cardiopulmonary arrest, commonly known as a heart attack;

11. I carefully dissected the neck of Richard Joseph Gregory in order to discover any evidence that Mr. Gregory was choked;

12. Common physical findings of choking include abrasions to the skin, hemorrhage to the underlying soft tissues, including muscles of the neck, damage to the lining of the great vessels of the neck and/or fracture of the hyoid bone or larynx.

13. I found no evidence that Mr. Gregory had been choked or that choking contributed to Mr. Gregory's death;

14. Shortness of breath or the sensation of not being able to breathe is a common symptom of a heart attack;

15. An individual must be able to breathe in order to speak. Therefore, if someone is talking, that individual must also be breathing;

16. Richard Gregory's alleged statements that he could not breathe are consistent with a heart attack and the sensation of shortness of breathe. The statements are inconsistent with choking;

17. At the time of Richard Gregory's death he was under the influence of cannabinoids, commonly known as marijuana. There is some recent evidence which suggests that marijuana intoxication may contribute to a heart attack via vasospasm;

18. There are five classifications for death. They are: natural, homicide, accident, suicide and undetermined;

19. It is my opinion that the death of Richard Gregory is best classified as a homicide because a struggle occurred between

individuals;

20. The homicide classification does not imply criminal activity or wrongdoing by any individual. It simply indicates there was a struggle between individuals;

21. Based upon a review of the factual circumstances, my experience, knowledge and education as well as the physical findings on autopsy, it is my opinion, to a reasonable degree of medical certainty, that Richard Gregory died of cardiopulmonary arrest;

22. Attached as Exhibit "A" is a true and accurate copy of the autopsy report which I prepared and which summarizes the autopsy findings.

FURTHER AFFIANT SAYETH NAUGHT.

_____
ANTHONY MANOUKIAN, M.D.

Subscribed and sworn to before me,
this 4th day of May, 2004.

_____
Notary Public, State of Hawaii
Kay A. Ogasawara
Print Name
My commission expires: 7/1/05

L.S.

02-100282



Clinical Labs of Hawaii

**Maui Memorial Medical Center**
Department of Pathology
221 Mahalani Street
Wailuku, HI  96793
TEL: 808-242-2064     FAX: 808-244-7246

## Autopsy Report

| | | | | |
|---|---|---|---|---|
| Patient Name: | GREGORY, RICHARD JOSEPH | | Accession #: | MAF02-169 |
| Med. Rec. #: | 9900127556 | Client: | CLH - Clinical Labs | |
| DOB: | 12/24/1950 (Age: 51) | Location: | FOP (O) | Expiration Date: 12/3/02 |
| Gender: | M | | | Autopsy Date: 12/3/02 |
| Physician(s): | Manoukian, Anthony | | | Reported: 2/11/03 |

Police Case Number:  MPD02-1000252
Autopsy Restrictions:  None

### PATHOLOGIC DIAGNOSES:

I. CARDIOPULMONARY ARREST DURING A VIOLENT STRUGGLE.

II. ARTERIOSCLEROTIC CARDIOVASCULAR DISEASE INVOLVING RIGHT CORONARY ARTERY.

III. MILD CARDIOMEGALY (410 GRAMS).
   A. PERIVASCULAR MYOCARDIAL FIBROSIS.
   B. INTERSTITIAL MYOCARDIAL FIBROSIS.

IV. CANNABINOID INTOXICATION.

V. MULTIPLE MISCELLANEOUS, SUPERFICIAL INJURIES.
   A. ABRASIONS TO FOREHEAD.
   B. BRUISE TO RIGHT ANTEROLATERAL TONGUE.
   C. ABRASION TO RIGHT ELBOW.
   D. ABRASIONS TO BILATERAL WRISTS.
   E. ABRASIONS TO RIGHT KNEE.

[Stamp: RECORDS & I.D. SECTION  2003 FEB 27 A 10:24  MAUI POLICE DEPARTMENT]

OPINION:  This 51-year-old, Caucasian male, Richard Joseph Gregory, died of a cardiopulmonary arrest during a violent struggle complicating arteriosclerotic cardiovascular disease, mild cardiomegaly and cannabinoid intoxication. He had been at a recording studio with acquaintances. The Maui Police Department was called when he refused to leave the premises. He was non-cooperative with Police when they arrived and exhibited bizarre behavior with religious ideations. He became combative as Police attempted to subdue handcuff him. According to one officer, Gregory complained of difficulty breathing on three occasions although he was able to continue vocalizing and struggling. As he was finally handcuffed, and as Officers sat him up, he became suddenly unresponsive. Resuscitation with defibrillation was attempted, but was unsuccessful.

At autopsy, multiple superficial non-life-threatening injuries were observed to the forehead, the tongue, the right elbow, the bilateral wrists and the right knee. Internal examination showed no evidence of significant traumatic injury, and in particular, no head or neck injuries were observed. The respiratory organs were intact. Examination of the heart revealed mild cardiomegaly (410 grams) with narrowing of the proximal right coronary artery with soft, grumous material. Histologic examination of the tissues revealed perivascular and

GREGORY, RICHARD JOSEPH

Bruce Dorsey, M.D., Medical Director
Page 1 of 4

0000250

interstitial myocardial fibrosis. Toxicologic analyses of body fluids showed the presence of cannabinoids in the blood including delta-9-tetrahydrocannabinol (4.4 ng/ml) indicating acute use.

Sudden death during or immediately after a violent struggle is well-described in the forensic literature. Often, these events are unassociated with a fully explanatory anatomic cause of death. In the typical scenario, the deceased has engaged in the violent struggle with one or more individuals. Restraint or positional considerations may be contributory. During the struggle, or more commonly immediately after it, the individual abruptly becomes unresponsive, develops cardiopulmonary arrest, and does not respond to resuscitation. DiMaio & DiMaio (1993) hypothesized that death is due to Norepinephrine and Epinephrine surges in association with ischemia of the myocardium sensitizing the heart to terminal arrhythmia. This phenomenon has been described in association with psychological as well as physical stress and may be in association with or without underlying heart disease.

Since this violent struggle has occurred between individuals, the best classification of the manner of death is homicide. It is noted that homicide as used here is a pathologic classification and does not indicate criminal activity, nor does it imply murder.

***Electronically Signed Out By Anthony Manoukian M.D***

## AUTOPSY REPORT PROTOCOL

An autopsy was performed on the body of Richard J. Gregory at Maui Memorial Medical Center on December 3, 2002.

## EXTERNAL EXAMINATION

The body is that of a well-developed, well-nourished, Caucasian male. The body is completely disrobed and is accompanied by the following articles of clothing: white T-shirt with blue print and blue shorts. The body weighs an estimated 185 pounds, measures approximately 68 inches and appears compatible with the reported age of 51 years. The body is cold. Rigor is present to an equal degree in all extremities. Lividity is present and fixed on the posterior surface of the body except in areas exposed to pressure. The scalp hair is brown, wavy in a male balding distribution, and measures up to 9 cm in length. Facial hair consists of brown moustache trimmed to 1 cm with scattered brown stubble, elsewhere. The irides are hazel. The corneae are clear. The conjunctivae are congested. The sclerae are white. The external auditory canals, external nares and oral cavity are free of foreign material and abnormal secretions. The teeth are natural and in good condition. The neck is symmetrical and the trachea is palpable in the midline. The chest diameter is within normal limits and symmetrical. The abdomen is flat. No surgical scars are noted. The upper extremities are symmetrical bilaterally. No needle tracks or tattoos are noted. The hands, fingers and fingernails are intact. The external genitalia are those of a normal adult circumcised male. The lower extremities are symmetrical bilaterally. The back and posterior body surfaces reveal no abnormalities.

## EVIDENCE OF THERAPY

Evidence of medical intervention includes an endotracheal tube, IV access to the left antecubital fossa, therapeutic vena puncture wounds to the right antecubital fossa, EKG pads to the anterior torso and evidence of cardiopulmonary resuscitation.

## EVIDENCE OF INJURY

I.   Miscellaneous Injuries

An abrasion to the right forehead measures 3 x 1.5 cm. A slight contusion to the left forehead measures 3 x 1 cm.

A linear abrasion to the right posterior elbow measures 1.5 cm in length. Curvilinear abrasions are present to the wrist bilaterally measuring 4 x 0.4 cm.

GREGORY, RICHARD JOSEPH     Autopsy Report     MAF02-169

An abrasion to the lateral right knee measures 1.5 cm in diameter. A linear abrasion to the medial right knee measures 4 cm in length. A healing abrasion to the anterior left leg measures 1 cm in diameter.

These wounds are superficial in nature and are not considered life-threatening.

## INTERNAL EXAMINATION

**Body Cavities:** The body is opened by the usual thoraco-abdominal incision, and the chest plate is removed. No adhesions or abnormal collections of fluid are present in any of the body cavities. All body organs are present in their normal anatomic position. The subcutaneous fat layer of the abdominal wall measures 3 cm in thickness. There is no internal evidence of blunt force or penetrating injury to the thoraco-abdominal region.

**Head:** The scalp is reflected after making the usual intermastoid incision. The calvarium of the skull is removed. The dura mater and falx cerebri are intact. There is no epidural or subdural hemorrhage present. The leptomeninges are thin and delicate. The cerebral hemispheres are symmetrical. The structures at the base of the brain including the cranial nerves and blood vessels are intact. Coronal sections through the cerebral hemispheres reveal no lesions. Transverse sections through the brainstem and cerebellum are unremarkable. The brain weighs 1270 grams.

**Neck:** Examination of the soft tissues of the neck, including strap muscles, thyroid gland and large vessels, reveals no abnormalities. The hyoid bone and larynx are intact.

**Cardiovascular System:** The pericardial surfaces are smooth and glistening. The pericardial sac is free of significant fluid and adhesions. The coronary arteries arise in their normal anatomic positions and follow a right dominant distribution. Soft grumous material is present within the proximal right coronary artery with approximately 90% luminal narrowing. The left ventricle is hypertrophic with a maximum diameter of 2.2 cm. The atrial and ventricular septa are intact. The myocardium is dark red-brown and firm with focal palor over the anterolateral free wall. The aorta and its major branches arise normally, follow the usual course and are widely patent. There is no significant arteriosclerosis or other abnormality. The vena cava and pulmonary arteries are free of thrombi. The heart weighs 410 grams.

**Respiratory System:** The upper airway is clear of debris and foreign material. The mucosal surfaces are smooth, yellow-tan and unremarkable. The pleural surfaces are smooth, glistening and unremarkable, bilaterally. The pulmonary parenchyma is pink-tan to red-purple exuding moderate amounts of blood and frothy fluid. No focal lesions are noted. The pulmonary arteries are normally developed, patent and without thrombus or embolus. The right lung weighs 800 grams, and the left lung weighs 800 grams.

**Liver and Biliary System:** The hepatic capsule is smooth, glistening and intact, covering red-brown, moderately congested parenchyma with focal patchy, rust-brown discoloration. The gallbladder contains 8 mL of green-brown mucoid bile. The mucosa is velvety and unremarkable. The extrahepatic biliary tree is patent without evidence of calculi. The liver weighs 1870 grams.

**Alimentary Tract:** Injury to the tongue is described above. The esophagus is lined by smooth, intact mucosa. The gastric mucosa is arranged in the usual rugal folds. The lumen is devoid of contents. The small and large bowels are unremarkable. The pancreas has a normal pink-tan appearance and the ducts are clear. The appendix is present.

**Genitourinary System:** The renal capsules are smooth and thin, semi-transparent and strip with ease from the underlying smooth, red-brown cortical surfaces. The cortices are slightly congested and sharply delineated from the medullary pyramids which are red-purple and unremarkable. The calices, pelves and ureters are unremarkable. The urinary bladder contains 60 cc of straw-colored urine. The mucosa is gray-tan and smooth. The testes, prostate and seminal vesicles are unremarkable. The right kidney weighs 110 grams; the left 120 grams.

**Reticuloendothelial System:** The regional lymph nodes are grossly unremarkable. The spleen has a smooth, intact capsule covering red-purple, moderately firm parenchyma. The spleen weighs 250 grams.

**Endocrine System:** The pituitary, thyroid and adrenal glands are unremarkable.

**Musculoskeletal System:** Muscle development is normal. No bone or joint abnormalities are noted.

<u>Microscopic Description:</u>

GREGORY, RICHARD JOSEPH

GREGORY, RICHARD JOSEPH          **Autopsy Report**                          MAF02-169

**Heart:** Sections of the heart show an intact epicardial surface with no evidence of inflammatory infiltrate or hemorrhage. The myocardial fibers are viable. However, they vary in size and shape with evident "boxcar" nuclei. There is no evidence of acute myocardial infarct, fiber fragmentation, necrosis or hemorrhage. However, multifocal patchy interstitial and perivascular myocardial fibrosis is seen. No inflammatory infiltrate is noted in the myocardium. Sections confirm calcific arteriosclerosis of the coronary arteries although the grumous material has been apparently expressed from the vascular lumen during processing.

**Lungs:** The alveoli are poorly expanded. The alveolar septae are markedly congested. Some edema fluid and alveolar hemorrhage is seen throughout the sections. There is no evidence of pneumonia or granulomatous inflammation. The tracheobronchial tree shows no evidence of aspiration of gastric content. The pulmonary vessels show no thromboemboli.