IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

VALERIE GREGORY, individually and as )
Special Administrator of the Estate of )
RICHARD J. GREGORY, and as next )
friend of ISREAL GREGORY, a minor, )
KEANU GREGORY, a minor, KALANI )
GREGORY, a minor, and SHAYLISSE )
GREGORY, a minor, )
              Plaintiffs, )
           vs. )
COUNTY OF MAUI, MAUI POLICE )
DEPRTMENT, GARRETT TIHADA, )
EDWIN AMONG, NICHOLAS ANGELL, )
JOHN DOE OFFICERS 1-10, JOHN )
DOES 1-10, JANE DOES 1-10, DOE )
CORPORATIONS 1-10, DOE )
PARTNERSHIPS 1-10 and DOE )
GOVERNMENTAL ENTITIES 1-10, )
              Defendants. )

CIVIL NO. CV 04-00516 SPK KSC

**Declaration of D.P. Van Blaricom**

I, D.P. Van Blaricom, do hereby declare as follows:

1. I am of legal age, competent to testify, and have personal knowledge of the facts set out herein.

2. My law enforcement career has spanned over forty-eight years of active employment to date:

    a. Twenty-nine years of continuous police service, during which I was Chief of Police in the City of Bellevue, Washington for the last eleven of those years;

    b. Thereafter, I have been engaged as a police practices consultant for an additional nineteen years.

EXHIBIT 46

Declaration of D.P. Van Blaricom - 1

3. A detailed statement of my qualifications and experience is attached hereto as Exhibit "A". My areas of expertise in the police arts and sciences include, but are not limited to: police use of force; police administration, policies, practices, procedures and standards of care; restraint asphyxia; internal investigation and discipline. As a police practices expert, I have testified in state and federal courts for both plaintiffs and defense throughout the United States.

4. I was retained by Eve M. Green on May 15, 2003 to review the facts and circumstances of the death of Richard J. Gregory, while in the custody Maui Police Department (MPD) Officers Edwin Among, Nicholas Angell and Garrett Tihada on December 2, 2002. At the time of making this report I have discussed the matter with plaintiffs' counsel and I have reviewed the following documents:

    a. Complaint;

    b. Plaintiffs' First Interrogatories with Answers;

    c. Plaintiffs' First Requests for Production with Responses;

    d. MPD reports:

        1) 02-100252,

        2) 02-100282;

    e. Autopsy report MAF02-169;

    f. Statements:

        1) Officer Among,

        2) Officer Angell,

        3) Officer Tihada;

    g. Defendants' Motion for Summary Judgment (state court),

Declaration of D.P. Van Blaricom - 2

1      h.  Plaintiff's Opposition to Summary Judgment (state court);

2      i.  Expert reports:

3           1)  Robert Bragg,

4           2)  Dr. Theodore Chan,

5           3)  Dr. Vincent Di Maio,

6           4)  Dr. Robert Marvit;

7      j.  Declarations:

8           1)  Officer Among,

9           2)  Officer Angell,

10          3)  Officer Tihada,

11          4)  Chief Thomas Phillips,

12          5)  Robert Bragg,

13          6)  Dr Chan,

14          7)  Dr. Di Maio,

15          8)  Dr. Marvit,

16          9)  Dr. Anthony Manoukian;

17     k.  Depositions:

18          1)  Officer Among,

19          2)  Chief Phillips,

20          3)  Dr. Manoukian,

21          4)  Vincent ("Vinny") Finazzo,

22          5)  Jason ("Jackson") Fuqua,

23          6)  James Antunez,

       7) Clarisse Baisa,

       8) Elizabeth Hashimoto,

       9) Gary Hashimoto;

I. Defendants' Motion for Summary Judgment (federal court).

5. It is my customary practice to evaluate the objective reasonableness of police conduct on a case-by-case basis from the perspective of a police reviewing authority. In conducting that evaluation I apply:

    a. My training and experience as a career police officer, who was required to make forcible arrests in the performance of my law enforcement duties;

    b. My training and experience as a police supervisor, who was assigned to conduct internal investigations;

    c. My training and experience as a police supervisor and commander, who was assigned to train police officers on use of force;

    d. My training and experience as a police supervisor and commander, who had to evaluate the performance of my subordinate police officers;

    e. My training and experience as a chief of police, who had to hire, train, assign, administer and, as may be necessary, terminate police officers;

    f. My training and experience as a chief of police, who had to develop and administer policies and procedures for directing police officers under my command;

    g. My training and experience as a chief of police, who had to review internal investigations and make the final administrative decision on whether to sustain or not sustain allegations of misconduct;

h.  My continuing education and training, as is supplemented by an ongoing review of professional publications that address contemporary developments in my areas of expertise;

i.  Additionally, I have served as a police practices expert in 1,000+ matters of police-related litigation, wherein I have often testified in deposition and/or at trial on whether or not a particular fact pattern was objectively reasonable under the totality of circumstances.

6. Based upon my training and experience, it is my considered opinion that law enforcement chief policy makers in the United States have long been well aware of the risks of restraint asphyxia through adequate training. In reaching that conclusion I was specifically mindful of the following publications:

a.  International Association of Chief of Police (IACP):
   1) Training Key #281 "Transporting Prisoners" (1978),
   2) Training Key #412 " Transportation of Prisoners II" (1992),
   3) Training Key #429 "Custody Death Syndrome" (1993),
   4) Training Key #544 "The Four-Pony Restraint" (2003),
   5) Executive Brief "In-Custody Deaths" (March 1994),
   6) Policy Review "The Prone Restraint - Still a Bad Idea" (Spring 1998),
   7) Policy Review "Added Concern about Four-Point Restraints (Fall/Winter 2001),
   8) Policy Review "British Columbia Taser Commission Report" (Winter/Spring 2005).

b.  National Law Enforcement Policy Center:
   1) Model Policy "Transportation of Prisoners" (August 1990),
   2) Model Policy "Transportation of Prisoners" (October 1996).

1      c. *The Police Chief:*

2          1) "Law Enforcement Custody Deaths" (August 1988),

3          2) "Liability Constraints on Human Restraints" (March 1993),

4          3) "Handcuffs and Restraints" (January 1996);

5      d. Commission on Accreditation for Law Enforcement Agencies: Standard 1.3.6

6         "Hog-Tie" Restraint;

7      e. San Diego Police Department: "Final Report of the Custody Death Task

8         Force";

9      f. *The American Journal of Forensic Medicine and Pathology:* "Restraint

10        Asphyxiation" (1994);

11     g. American Society of Law Enforcement Trainers (ASLET)

12         1) "Sudden In-Custody Deaths" (November/December 1995),

13         2) "Sudden Custody Death Syndrome: An Overview" (January 17,

14            1996).

15     h. *FBI Law Enforcement Bulletin:*

16         1) "Suspect Restraint and Sudden Death" (May 1996),

17         2) "Police Use of Non-deadly Force to Arrest" (October 1997);

18     i. *Police:*

19         1) "Gasping for Breath" (July 1996),

20         2) "Combative Subjects Require Special Care" (July 1996),

21         3) "Leading the Fight Against In-Custody Deaths" (July 1996);

22     j. *The Police Marksman:* "Medical Risk Factors of Sudden In-Custody Deaths"

23        (November/December 1997);

24     k. National Law Enforcement Technology Center: "Positional Asphyxia -

25        Sudden Death" (June 1995);

I.   *Excited Delirium Syndrome – Cause of Death and Prevention*, Di Maio 2006.

7. Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered opinion that the arresting officers used excessive force that placed the decedent at risk of restraint asphyxia. In reaching that conclusion I was specifically mindful of the following information from the record:

    a.    The decedent displayed symptoms of excited delirium:

        1)    He *"appeared extremely high strung, excitable and jumpy"*,

        2)    He *"appeared to be very rigid and tense"*,

        3)    His eyes *"appeared saucer like"*,

        4)    He *"spoke very loudly and rapidly"*;

    b.    Adequately trained law enforcement officers are aware that:

        1)    Persons displaying the symptoms of excited delirium are particularly at risk of restraint asphyxia,

        2)    The initial approach to a person displaying symptoms of excited delirium, much like an approach to the mentally ill, should demonstrate a calming and helpful demeanor that serves to not escalate the encounter, rather that immediately proceed to an aggressive and physical engagement that will guarantee a struggle,

        3)    That specific approach to excited delirium is recommended by defendants' expert Di Maio, wherein he has recently written, *"Physical intervention should only be used as a last resort"*,

        4)    He further writes, however, that there *"is a serious deficiency in the training of police officers"* and, *"Their lack of knowledge, and*

*unintentionally inappropriate practices in attempting arrest, may trigger a fatal situation";*

    c.    Nevertheless:

        1)    All three officers immediately took aggressive physical action against the decedent by forcibly grabbing him,

        2)    Officers Among and Angell forced the decedent face down onto a couch,

        3)    Although the decedent did not pose a significant threat of death or serious physical injury, Officer Tihada applied both a carotid restraint and a bar arm choke hold, which are potentially lethal force,

        4)    In fact, the decedent's only *"weapon"* was a *"pen"*, which Officer Tihada had immediately removed from his hand,

        5)    Officer Tihada further pressed down on the back of decedent's neck, while he was face down on the couch, *"as hard as I could"* with *"my weight holding him down";*

        6)    After going from the couch to the floor, Officer Tihada continued to hold the decedent on his stomach by pressing on the *"back of his neck",*

    d.    During the entire struggle, of approximately five minutes, the decedent repeatedly told the officers:

        1)    *"You're choking me",*

        2)    *"I can't breathe";*

Declaration of D.P. Van Blaricom - 8

e. In spite of these specific complaints and warnings of an inability to breathe, the officers continued to use the same unreasonable force that was causing the decedent's respiratory distress, as they mistakenly believed that the decedent *"could breathe because he was talking"* and that conclusion is simply *"common sense"*;

f. Contrary to the officers' belief, however:

   1) Dr. Manoukian testified in his deposition (page 74 line 25 and page 75 lines 1-5), *"Now, if there is compression to the chest, there may be the one way flow of oxygen out, and a person then might be able to speak, but then he would no longer be able to speak after that, because he would not be able to ventilate to bring air back into the lungs"*;

   2) Additionally, Dr. John Butt is a pathologist, who has written for the IACP, *"Police may be misled by the fact that the subject can still speak, indicating a clear airway, which does not necessarily mean they can breathe at an adequate rate"*;

g. In any event it is well understood, by adequately trained law enforcement officers, that a person who cannot breathe will increasingly struggle to maintain that essential function for sustaining life;

h. The decedent eventually stopped breathing, became unresponsive and died;

i. Even then, the officers initially concluded that the decedent was *"holding his breath and feigning"*;

  j. It is objectively unreasonable excessive force per se to actively interfere with respiration until breathing ceases;

  k. The autopsy physician concluded that the manner of death was *"homicide"* and *"restraint or positional considerations may be contributory"*.

8. Defendants' police practices expert, Robert Bragg, has produced a report and a declaration, wherein he opines on the officers' tactics in this matter and further states, *"Many of plaintiffs' expert D.P. Van Blaricom opinions are based in part, on out-dated and scientifically questionable information"*. In rebuttal thereto, I must note the following:

  a. Mr. Bragg has never been a police officer and, accordingly, has no actual police experience;

  b. His training and experience is as a defensive tactics instructor who teaches in the controlled environment of a police academy setting;

  c. To the contrary, I have personally taken hundreds of persons into custody under actual field conditions, including persons who were psychotic, and I can assure the trier of fact that the experience is demonstrably different than an exercise on mats in a gym;

  d. Further, Mr. Bragg has no *"scientific"* training that would qualify him to determine what information is or is not *"scientifically questionable"*;

  e. The information that he characterizes as being *"out-dated"* apparently refers to IACP and other authoritative responses to information that he prefers for his opinions;

Declaration of D.P. Van Blaricom - 10

e. The information that he characterizes as being *"out-dated"* apparently refers to IACP and other authoritative responses to information that he prefers for his opinions;

f. Additionally, I have reviewed fifty-seven restraint asphyxiations and/or excited delirium cases throughout the United States to date and they will continue to occur until officers are adequately trained to prevent them.

9. I am prepared to testify to these opinions in deposition or at trial if called upon to do so.

10. If I am provided with further documentation for my review, I may have additional opinions.

I declare under penalty of perjury of the laws of the State of Hawaii that the foregoing is true and correct.

Executed this 31st day of October 2005 at Bellevue, Washington.

D. P. VAN BLARICOM

# EXHIBIT "A"

## D. P. VAN BLARICOM, INC.

MPA, FBI-NA, CHIEF OF POLICE (RET.)
*POLICE PRACTICES EXPERT*
835 91ST LANE NORTHEAST
BELLEVUE, WASHINGTON 98004-4811
(425) 453-0082   FAX (425) 453-3263   E-Mail dvbinc@aol.com
Web Page expertwitness.com/vanblaricom

## *SUMMARY of QUALIFICATIONS*

A. Retained as a police practices expert by both plaintiffs and defendants in over **1,200** lawsuits alleging police liability throughout the United States: AK, AL, AZ, CA, CO, DC, DE, FL, GA, HI, IA, ID, IL, IN, KS, KY, LA, MD, ME, MI, MN, MO, MS, MT, ND, NE, NJ, NM, NV, NY, OH, OK, OR, PA, SC, SD, TX, UT, VA, WA, WI and WY.

B. Testified on numerous occasions in federal courts, state courts and arbitrations.

C. Prevailing parties' police practices expert in published appellate decisions for the United States 1st, 9th and 10th Circuits; State Supreme Courts of AZ, CO, ID, MT, MS, OR and WA; Appeals Courts of CA, FL and WA.

D. Recognized as an expert on the issues of:

   1. **POLICE USE of FORCE** (plaintiff's expert in leading 9th Cir. Davis v. Mason County, WA 1991, a consultant to federal prosecution task force in United States v. Koon, et al. 1993, a plaintiff's expert in Rodney King v. City of Los Angeles, CA 1994, defendants' expert in 1st Cir. Roy v. City of Lewiston, ME 1994, defendants' expert in WA App. Lee v. City of Spokane, WA 2000, plaintiff's expert in 9th Cir. Haugen v. City of Puyallup, WA 2003 and plaintiff's expert in 9th Cir. Wilkins v. City of Oakland, CA 2003).
   2. **LESS-LETHAL ALTERNATIVES to DEADLY FORCE in BOTH EQUIPMENT and TACTICS** (plaintiff's expert in the 9th Cir. Reed v. Hoy 1989 and ID S.Ct. Kessler v. Payette County and State of ID 1997);
   3. **POLICE K-9s as USE of FORCE** (quoted in Deadly Force: What We Know 1992 and plaintiff's expert in FL App. Pacot v. Wheeler 2000);
   4. **CONTROL of POLICE VEHICULAR PURSUIT and EMERGENCY DRIVING** (my policy was recommended by the Public Risk and Insurance Management Association of Washington, D.C. as being among the 4 best in the United States 1984, quoted by 2 CA App. Payne v. City of Perris 1993 and Berman v. City of Daly City 1993, OR S.Ct. Lowrimore v. Marion County 1990, MS S.Ct. Mosby v. Jeffries 1998 and CO S.Ct. Tidwell v. City & County of Denver 2003);

5. **POLICE ADMINISTRATION and POLICY**;
6. **POLICE PRACTICES, PROCEDURES and STANDARDS of CARE** (plaintiff's expert in 9th Cir. Gulliford v. Pierce County 1998 and city defendant's expert in 6th Cir. Carter v. City of Detroit 2005);
7. **SPECIAL DUTIES to PROTECT and 911 RESPONSES** (plaintiffs' expert in WA S.Ct. Bailey v. Town of Forks 1987, Roy v. City of Everett 1992, AZ S.Ct. Hutcherson v. City of Phoenix 1998, MT S.Ct. Nelson v. Driscoll 1999, leading 9th Cir. Wood v. Ostrander 1988 and 9th Cir. Kennedy v. City of Ridgefield 2005);
8. **DOMESTIC VIOLENCE** (quoted by the National Law Enforcement Policy Center in their model policy 1991 and plaintiff's expert in 9th Cir. Beier v. City of Lewiston 2004);
9. **POLICE RESPONSE to the MENTALLY ILL** (plaintiff's expert 9th Cir. Gibson v. Washoe County 2002, US MD PA Schorr v. Borough of Lemoyne 2003 and Hererra v. City of Las Vegas 2004);
10. **CIVIL RIGHTS VIOLATIONS** (under 42 U.S.C. § 1983);
11. **RESTRAINT ASPHYXIA** (plaintiff's expert in 10th Cir. Cruz v. City of Laramie 2001);
12. **POLICE INTERNAL INVESTIGATION and DISCIPLINE**;
13. **DISCRIMINATORY ENFORCEMENT or EMPLOYMENT PRACTICES**;
14. **AMERICANS with DISABILITIES ACT** (plaintiff's expert in 10th Cir. Davoll v. City of Denver 1996, 9th Cir. Cripe v. City of San Jose 2001 and US MD PA Schorr v. Borough of Lemoyne 2003);
15. **POLICE COLLECTIVE BARGAINING**;
16. **FIREARMS** (USMC trained small arms repair MOS 2111 and police firearms instructor); and
17. **PRIVATE SECURITY PRACTICES** (plaintiff's expert in US WD WA Groom v. Safeway).

E. Served 29 years in municipal policing with the last 11 as Chief of Police (until retirement and election to the City Council) in Bellevue, Washington - the State's then fourth largest and fastest growing city.

F. Directed development of a progressive police department and created several model programs, including: control of vehicular pursuits, alternatives to deadly force, fully integrated emergency response team operations, domestic violence reduction, affirmative action employment of minorities and women, comprehensive crime prevention, lateral recruitment of experienced officers, police canine operations, multi-city narcotics unit and others. Additionally, co-authored the Washington State Standards on Internal Discipline of Law Enforcement agencies.

G. Served on many professional commissions and committees, including: Washington Criminal Justice Education & Training Center Steering Committee, Bellevue Community College Local Advisory Council and Chairman Law Enforcement Program Advisory Board, Washington Attorney General's Committee on Security and Privacy, consultant to U.S. Department of Justice Community Relations Service, consultant to the National Consultation on Safety and Force, intern with 94th Congress, Governor's appointee to Community Task Force for Corrections Development, Washington State Council on Crime & Delinquency's Adult Criminal Policy Committee and Ad Hoc Committee on Board of Prison Terms/Paroles, Youth Eastside Services Board of Trustees, Eastside Community Mental Health Center Advisory Board, King County Executive's appointee to E911 Task Force, U.S. Attorney's Law Enforcement Coordinating Committee, Governor's appointee to Select Committee for Police/Fire Pension Review, IACP's Education & Training Committee, IACP's Organized Crime Committee, Assessor Team Leader for 1 of 5 Pilot Projects of the Commission on Accreditation for Law Enforcement Agencies, Governor's appointee to the Emergency Commission on Prison Overcrowding, IACP book reviewer, Suburban Cities Association's Jail Advisory Committee, Governor's Advisory Group on Personal Harassment, Portland, Oregon Chief's Committee on

    Police Use of Force. Assisted the appointing authorities at various times in selecting Chiefs of Police for Cities of Longview, Everett, Bellingham, Richland, Bremerton, Kirkland, Redmond, Clyde Hill, Kent (1991), Bellevue (1996) a Sheriff of King County and the Security Administrator of Seattle City Light (all in the State of Washington), King County Regional Justice Center Citizens Site Advisory Committee, Solutions To Tragedies of Police Pursuits Advisory Board, Superintendent of Public Instruction's Washington State Safe Schools Advisory Committee, King County Civil Rights Commission.

H. Hold a security clearance from the U. S. Government.

I. Maintain an extensive and current library of standards, policies, procedures, references, depositions and information on other experts with subscription services to update professional and legal developments in my areas of expertise.

## *EDUCATION*

University of Washington - Bachelor of Arts degree with magna cum laude honors 1973
Seattle University - Master of Public Administration degree 1976
**University of Washington – Certificate in Forensics 2000**
**Americans for Effective Law Enforcement – Certified Police Litigation Specialist 2003**
Graduate of the FBI's National Academy and Law Enforcement Executive Development programs
Numerous and continuing professional training courses

## *TEACHING and TRAINING EXPERIENCE*

Taught law enforcement courses at the Bellevue Police Academy, Washington Criminal Justice Education and Training Center, Bellevue Community College, Seattle University, Northwestern University's Traffic Institute and International City Management Association's Training Institute. Lectured on police-related issues before the University of Washington School of Law and Graduate School of Public Affairs, Simon Fraser University, American Civil Liberties Union, Washington State Bar, Seattle-King County Bar, Washington State Court Administrators, Washington Association of Legal Secretaries, American G. I. Forum, United States Justice Department Community Relations Service, National Institute of Law Enforcement and Criminal Justice, U. S. Attorney General's Task Force on Family Violence, Montana Department of Social and Rehabilitation Services, Washington Advisory Committee to the U.S. Commission on Civil Rights, American Society of Criminology, debated California Highway Patrol Commissioner on police pursuit before National Association of Police Planners and International Association of Police Planning and Research Officers in 1990, Labor Relations Information System, City of Bellevue's Management Certificate Training Program, lectured for Association of Trial Lawyers of America's Civil Rights Section and the National College of Advocacy on excessive force from the expert's perspective in 1994 and domestic violence litigation liability arising from failure of prevention and response in 1995, lectured on loss protection civil liability to Nordstrom Washington/Alaska Region in 1997, demonstrated expert witness testimony to the American Board of Trial Advocates in 2002. Additionally, served on the Law Enforcement Education Advisory Committee to the Washington State Board for Community College Education in developing their statewide curriculum, achieved the first college accreditation of a Basic Law Enforcement Academy in the State of Washington and currently serve on the Bellevue Community College Administration of Criminal Justice Program Advisory Board.

## PUBLICATIONS

"Recruitment and Retention of Minority Race Persons as Police Officers" in September 1976 issue of The Police Chief magazine, "An Overview of Police Service Today" in the April 18th and May 2nd, 1978 issues of Law Enforcement News, "Kids Meet Cops Through Basketball Trading Card Program" in the July 9th, 1979 issue of Law Enforcement News, "A Police Chief's View of Deadly Force" in the National Institute of Law Enforcement & Criminal Justice January 1979 booklet on Police Use of Deadly Force, "Career Development: The Next Step to Police Professionalism" in the November 1979 issue of The Police Chief magazine, "Crime Prevention Cuts Insurance Cost" in the August 1980 issue of Center City Report, "A Sensible Alternative to Those High-Speed Chases" in the November 25, 1980 issue of The Seattle Times, "Chiefs Should Chase Sane Pursuit Driving Guidelines" in the December 22, 1980 issue of Law Enforcement News, "Commercial Crime Prevention Can Earn Discounts" in the February 1981 issue of the FBI Law Enforcement Bulletin, "Enforcing Malicious Harassment Laws" in the January 1983 edition of Washington Council on Crime and Delinquency News, "Reducing Crime, Traffic Accidents - Bellevue Shows It Can Be Done" in the May 10, 1983 issue of The Seattle Times and the June 27, 1983 issue of Law Enforcement News, "Carrying A Gun - It Depends On You" in the February 3, 1985 issue of the Journal-American, "When To Use Deadly Force" in the Winter 1985 issue of the Washington Law Enforcement Executive Journal, "Domestic Violence - A New Approach to an Old Problem" in the June 1985 issue of The Police Chief magazine, "It's Time for Police To Re-Examine Their Role In Society" in the October 1, 1989 issue of The Seattle Times, "Shaking The Pillars of Police Tradition" in the October 31, 1989 issue of Law Enforcement News, "Training-The First Hundred Years" in Law Enforcement In Washington State: The First Hundred Years 1889-1989, "K-9 Use of Force: A Biting Example of Questionable Policy" in the July/August 1992 issue of Law Enforcement News, "Police Pursuit: Uncontrolled Deadly Force" in the February 28, 1993 issue of Law Enforcement News, Bulletin Alert on a "Hair-raising Comb" in the June 1994 issue of the FBI Law Enforcement Bulletin, "Excessive Force - The Expert's Perspective" in the Association of Trial Lawyers of America July 1994 Annual Convention Reference Materials Volume I, "Domestic Violence Litigation: Liability Arising from Failure of Prevention and Response" in the Association of Trial Lawyers of America July 1995 Annual Convention Reference Materials Volume I, "Shades of Blue: What White Police Officers Can - and Must - Learn from Minority Officers" in the January/February 1996 of the Police Executive Research Forum's Subject to Debate, "Doing Something About Excessive Force" in the January 15, 1998 issue of Law Enforcement News (republished by San Diego State University 2003), "The Consistent Law Enforcement Expert" in the November/December 1998 issue of The Forensic Examiner, "To Pursue or Not to Pursue: THAT is the Question" in the November 1998 issue of Police, "Handling the Mentally Ill" in the March 2000 issue of Police, "Building a Bridge" in the September 30, 2000 (25th Anniversary) issue of Law enforcement News, "The Media: Enemies or Allies?" in the April 2001 issue of The Police Chief, "Control of Police Vehicular Pursuit" in the 2004 (1) issue of Law Enforcement Executive Forum, "Preventing Officer-Involved Deaths of the Mentally Ill" in the Third Quarter 2004 issue of The Law Enforcement Trainer.

## NATIONAL TELEVISION and RADIO APPEARANCES

NBC Nightly News special report on the dangers of police vehicular pursuit.
NBC Today Show:
    1. Personal protection against criminal attack;
    2. Misuse of pepper spray to punish.

NBC *"You Be The Judge"* on the dangers of police vehicular pursuit.
NPR *"Cops and the Mentally Ill"*.

## QUOTED in MAJOR NEWSPAPERS

USA Today, Wall Street Journal, The New York Times, The Baltimore Sun, Los Angeles Times, San Francisco Chronicle, The Seattle Times, The Oregonian, Toronto Sun, The Virgin Island Daily News, The Tennessean, Christian Science Monitor, Milwaukee Journal Sentinel.

## PROFESSIONAL MEMBERSHIPS

**American Academy of Forensic Sciences (AAFS)**, International Association of Chiefs of Police (IACP) - Life Member, Americans for Effective Law Enforcement (AELE), FBI National Academy Associates, Washington Association of Sheriffs & Police Chiefs (WASPC) - Life Member, International Association of Directors of Law Enforcement Standards and Training (IADLEST), American Society of Law Enforcement Trainers (ASLET), Police Marksman Association (PMA), Law Enforcement Alliance of America (LEAA), International Police Association (IPA), Police Writers Association.

## OTHER ACTIVITIES and ASSOCIATIONS

Present -

Washington State Retired Deputy Sheriffs/Police Officers Association, Bellevue Police Benevolent Association, Pioneer Association of the State of Washington, Holland Society of New York.

Past -

Salvation Army's Metropolitan Seattle Advisory Board, Seattle University Alumni Association Board of Governors, Journal-American Board of Contributors, Historical Society of Seattle and King County Board of Trustees, Secretary of State's Advisory Group on Charitable Solicitations, King County Landmarks Commissioner, Bellevue Downtown Park Review Committee, Co-Chairman of Bellevue Chamber of Commerce Legislative Committee, Search and Screening Committee for Selection of Bellevue Community College President, Washington State Civil Air Patrol Citizens Advisory Council, Statewide City Employees Retirement System elected Trustee, City of Bellevue Disability Board, Municipal Employees Benefit Trust Retirement Committee, City of Bellevue Liaison to the Washington State Legislature, Bellevue Rotary Club, Aircraft Owners and Pilots Association as an FAA licensed commercial airplane and glider pilot with ratings for single engine land and sea, multi-engine land and instrument operations, elected Bellevue City Councilmember (did not run for re-election), Chairman of the Emerald City Flight Festival, Chairman of Wings Over Washington Centennial Celebration, Bellevue Repertory Theater Advisory Board, Woodland Park Zoo Bond Oversight Committee, United Olympic Life Insurance Company Board of Directors, Lakes Club Board of Governors, Columbia Tower Club Founder Member, Wing Luke Asian Museum Advisory Board, National Defense Executive Reserve Emeritus, Vice President and Planning Committee Chairman of the Museum of Flight Board of Trustees Executive Committee, Bellevue Convention Center Authority Vice Chairman and Chairman of the Construction, Human Resources and Art Advisory Committees - Note: structure was selected as the "Best New

Building" by the Puget Sound Business Journal, Eastside Journal Editorial Board, Advance Bellevue Advisory Board.

## *AWARDS*

USMC Expert Rifleman 1953-1956, FBI "Possible Club" 1970 (of the 19,130 police officers who attended the FBI National Academy during the 50 years from when it started to the year of my retirement in 1985, I was 1 of only 165/.0086% who fired a perfect score on the PPC or TRC), Appreciation from the Drug Enforcement Administration 1977, Outstanding Community Service from Bellevue Jaycees 1979, Human Rights (Implementing Law and Order with Justice) from Baha'i Communities of Bellevue and Eastside 1980, Youth Service from the Chief Seattle Council of the Boy Scouts of America 1983, Program Innovation from the King County Domestic Violence Coalition 1983, Support and Service from Bellevue Cadet Squadron Auxiliary USAF 1984, Law Enforcement Appreciation from the Puget Sound Chapter of the American Society for Industrial Security (presented by the Governor of the State of Washington) 1984, Outstanding Volunteer Service from the Salvation Army 1984, Outstanding Service as a Public Official Citizenship Award from the Bellevue Kiwanis Club 1985, Appreciation from the United States Secret Service 1986, **Award for Public Service from The U.S. Department of Justice 1986**, Recognition for 30 Years of Public Service from the City of Bellevue 1986, Recognition and Commendation Resolution by the Municipality of Metropolitan Seattle 1988, Appreciation for Service from the Woodland Park Zoo Bond Oversight Committee 1990, Appreciation for Service from the King County Executive 1992, Appreciation for Personal Contribution to Developing Bellevue Convention Center from the City of Bellevue 1993, Outstanding Support of the Arts (jointly with wife) from the City of Bellevue Arts Commission 1993, Commendation for Outstanding Service from the City of Bellevue 1997.