DEPARTMENT OF THE CORPORATION COUNSEL    205

BRIAN T. MOTO      5421
Corporation Counsel
LAUREEN L. MARTIN    5927
Deputy Corporation Counsel
County of Maui
200 S. High Street
Wailuku, Hawaii 96793
Phone:   (808) 270-7740
Facsimile: (808) 270-7152
S:\ALL\Llm\Civil\Gregory\reply motion for summary judgment.wpd

KENNETH ROBBINS, ESQ.
Robbins & Associates
Davies Pacific Center
841 Bishop Street, Suite 2200
Honolulu, Hawaii 96813
E-mail:  defend@robbinsandassociates.net

Attorneys for Defendants

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 3 2006

at 8 o'clock and 35 min A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VALERIE GREGORY, individually and as Special Administrator of the Estate of RICHARD J. GREGORY, Deceased, and as next friend of ISREAL GREGORY, a minor, KEANU GREGORY, a minor, KALANI GREGORY, a minor, and SHAYLISSE GREGORY, a minor,<br><br>        Plaintiffs,<br><br>    vs.<br><br>COUNTY OF MAUI, et. al.,<br><br>        Defendants | CIVIL NO. CV 04-00516 SPK KSC (Other Non-motor vehicle tort)<br><br>REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS COUNTY OF MAUI, MAUI POLICE DEPARTMENT, GARRET TIHADA, EDWIN K. AMONG AND NICHOLAS ANGELL'S MOTION FOR SUMMARY JUDGMENT; EXHIBITS "NNNN"-"IIIII"; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE<br><br><u>Hearing</u>:<br><br>Date: January 13, 2006<br>Time: 10:00 a.m.<br>Judge: Hon. Samuel P. King |

## TABLE OF CONTENTS

PAGE

A.  PLAINTIFFS HAVE FAILED TO ACCURATELY STATE
    THE UNDISPUTED FACTS  . . . . . . . . . . . . . . . 1

    1.  IT IS UNDISPUTED THAT RICHARD GREGORY
        ASSAULTED VINCENT FINAZZO . . . . . . . . . . . . 1

    2.  IT IS UNDISPUTED THAT GREGORY HAD A
        PEN IN HIS HAND AND WAS REPEATEDLY
        TOLD TO PUT THE PEN DOWN  . . . . . . . . . . . . 2

    3.  IT IS UNDIPUTED THAT GREGORY WAS A
        DANGER TO THE OFFICERS  . . . . . . . . . . . . . 3

    4.  IT IS UNDISPUTED THAT A CHOKE HOLD
        WAS NOT USED ON GREGORY . . . . . . . . . . . . . 4

    5.  IT IS UNDISPUTED THAT OFFICERS DID NOT
        PUSH GREGORY'S FACE INTO THE COUCH  . . . . . . . 5

    6.  IT IS UNDISPUTED THAT GREGORY DID NOT DIE
        OF ASPHYXIA . . . . . . . . . . . . . . . . . . . 6

    7.  IT IS UNDISPUTED THAT GREGORY DIED OF HEART ATTACK  . 7

B.  INADMISSIBLE EVIDENCE PRODUCED BY PLAINTIFFS
    SHOULD BE DISREGARDED BY THE COURT . . . . . . . . . . 7

    1.  THE POLICE REPORT . . . . . . . . . . . . . . . . 8

    2.  EXHIBIT 47: SELECTED PAGES FROM
        "EXCITED DELIRIUM SYNDROME" . . . . . . . . . . . 8

    3.  THE DECLARATION OF BLARICOM SHOULD BE
        DISREGARDED . . . . . . . . . . . . . . . . . . . 9

C.  THE OFFICERS ACTED REASONABLY  . . . . . . . . . . . 15

D.  DRUMMOND SUPPORTS DEFENDANTS' POSITION . . . . . . . 18

## TABLE OF AUTHORITIES

**CASES**

Page

Billington v. Smith, 292 F.3d 1177 (9th Cir. 2002) . . . . 9, 14

Colvin v. U.S., 479 F.2d 998, 1003 (9th Cir. 1973) . . . . . . 8

Drummond vs. City of Anaheim, 343 F.3d 1052
    (9th Cir. 2003) . . . . . . . . . . . . . . . . . 18, 19

Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) . . . . 7

Gonzalez v. Pierce County, 2005 WL 2088367 (W.D.Wash. 2005) . 12

Graham v. Connor, 490 U.S. 386,
    109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) . . . . . . . 12

Hangarter v. Provident Life and Accident Ins. Co.,
    373 F.3d 998, 1016 (9th Cir. 2004) . . . . . . . . . . 11

Kanae v. Hodson, 294 F.Supp.2d 1179 (D.Haw. 2003) . . . . . . 14

Keates v. City of Vancouver, 869 P.2d 88, 92,
    73 Wash.App. 257, 265 (Wash.App. 1994) . . . . . . . . 12

Miller v. Clark County, 340 F.3d 959,
    964 (9th Cir. 2003) . . . . . . . . . . . . . . . 16, 17

Miller v. Field, 35 F.3d 1088 (6th Cir. 1994) . . . . . . . . 8

Mukhtar v. Cal. State Univ., Hayward,
    299 F.3d 1053, 1066 n.10 (9th Cir. 2002) . . . . . . . 11

Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) . . . 7

Peterson v. City of Plymouth, 60 F.3d 469,
    475 (8th Cir. 1995) . . . . . . . . . . . . . . . . . 11

Phillips v. City of Milwaukee, 123 F.3d 586
    (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . 17

Reeves v. Churchich, 331 F.Supp.2d 1347,
    1353 (D.Utah 2004) . . . . . . . . . . . . . . . . . . 12

Saucier v. Katz, 533 U.S. 194, 201,
121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) . . . . . . . . 17

U.S. v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983) . . . . . . 8

<u>Volk v. County of Pierce</u>, 2005 WL 2291121 (W.D.Wash. 2005)  .  12

<u>White v. Pierce County</u>, 797 F.2d 812 (9th Cir. 1986)  . .  16, 17

<u>Whitted v. General Motors Corp.</u>, 58 F.3d 1200,
    1204 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . 7

**FEDERAL RULES**

    Fed.R.Civ.P. 56(E)                                          7

    Fed.R.Evid. 403                                             8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VALERIE GREGORY, individually and as Special Administrator of the Estate of RICHARD J. GREGORY, Deceased, and as next friend of ISREAL GREGORY, a minor, KEANU GREGORY, a minor, KALANI GREGORY, a minor, and SHAYLISSE GREGORY, a minor,<br><br>   Plaintiffs,<br><br> vs.<br><br>COUNTY OF MAUI, et. al.,<br><br>   Defendants | CIVIL NO. CV 04-00516 SPK KSC (Other Non-motor vehicle tort)<br><br>REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS COUNTY OF MAUI, MAUI POLICE DEPARTMENT, GARRET TIHADA, EDWIN K. AMONG AND NICHOLAS ANGELL'S MOTION FOR SUMMARY JUDGMENT |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS COUNTY OF MAUI, MAUI POLICE DEPARTMENT, GARRET TIHADA, EDWIN K. AMONG AND NICHOLAS ANGELL'S MOTION FOR SUMMARY JUDGMENT**

**A. PLAINTIFFS HAVE FAILED TO ACCURATELY STATE THE UNDISPUTED FACTS**

Plaintiffs have made numerous errors and misleading statements in summarizing the facts.

**1. IT IS UNDISPUTED THAT RICHARD GREGORY ASSAULTED VINCENT FINAZZO**

Plaintiffs ignore Richard Gregory's ("Gregory") assault on Vincent Finazzo ("Finazzo").[1] It is undisputed that Gregory shoved Finazzo into a door.   Exhibits "Z" and "CCC".   There is no evidence to the contrary.

Similarly, Plaintiffs state that police responded to the call of a trespasser.   Again, Plaintiffs ignore that the police were told Gregory had hit someone.   ¶11 of Exhibit "LLLL".

---

[1] Gregory also threw Finazzo's cell phone. Exhibit "U".

## 2.    IT IS UNDISPUTED THAT GREGORY HAD A PEN IN HIS HAND AND WAS REPEATEDLY TOLD TO PUT THE PEN DOWN

Plaintiffs suggest that Gregory may not have been holding a pen when the officers entered the studio.  The Plaintiffs argue that Finazzo did not see anything in Gregory's hands when he left the studio.  However, Finazzo left the studio when the police came up the stairs and therefore was not in the studio at the same time as the Officers.  Plaintiffs' Exhibit "23".

There is nothing inconsistent with Finazzo failing to see a pen in Gregory's hands before the police enter the studio.  In fact, Finazzo's testimony further supports the Defendants' position that Gregory was acting aggressively towards the police.

Assuming Gregory did not have a pen in his hand when Finazzo exited the studio, Gregory must have picked up the pen after being informed by Finazzo that the police were there.  Plaintiffs' Exhibit "24".  Therefore, Gregory apparently picked up the sharpest item he could find in order to confront the police.

Plaintiffs also argue that "no witness heard officers' instructing Richard to put down a pen."  Amazingly, Plaintiffs ignore the testimony of the all three witnesses in the studio at the time.  They clearly state Gregory had a pen in his hand and was told repeatedly to drop it.  ¶16 of Exhibit "LLLL", ¶¶10-11 of Exhibit "MMMM" and ¶¶7 and 9 of Exhibit "IIII".

Furthermore, Finazzo and Jason Fuqua ("Fuqua") were never asked whether they heard the Officers say "put down the pen".  Exhibits "NNNN" and "OOOO".  Even assuming that Finazzo and Fuqua did not hear the Officers say that, this is not inconsistent.

Finazzo and Fuqua were not in the room when the Officers were inside. Neither witness stated that they were able to hear every word said in the studio. Therefore, it is undisputed that Gregory had a pen in his hand was repeatedly instructed to put it down.

### 3. IT IS UNDISPUTED THAT GREGORY WAS A DANGER TO THE OFFICERS

While continuing to approach the Officers with the pen, Gregory defiantly stated "no, what for". ¶9 of Exhibit "IIII".

Importantly, Gregory was holding the pen in an aggressive manner with the tip held outward. ¶14 of "LLLL". It was not as if Gregory had just finished using the pen to write something and happened to be holding it. Rather, Gregory picked up the pen when the police arrived and held it with the tip directed *towards* the Officers. There can only be one purpose for holding a pen in such a manner, i.e., to strike or intimidate the Officers. Blaricom acknowledges that a pen can be a weapon. Exhibit "PPPP".

As noted, Gregory continued to approach the Officers while holding the pen in an threatening manner and refusing to comply with the Officers' commands. ¶9-11 of Exhibit "IIII". Officers are trained to keep a distance from suspects for the officers' safety. Exhibit "QQQQ". If the individual is unarmed, the recommended distance is two arm lengths. However, if an individual has an edged weapon, the distance is twenty-one feet. Exhibit "QQQQ".

A safe distance from a suspect is crucial for the safety of officers. Eleven to fifteen percent of all officers killed in the last decade were killed by their own gun. Exhibit "RRRR". Even

3

Blaricom acknowledges that suspects who act aggressively towards police are exhibiting dangerous tendencies. Exhibit "SSSS". Based upon the undisputed facts Gregory posed a significant danger to the Officers.

### 4.    IT IS UNDISPUTED THAT A CHOKE HOLD WAS NOT USED ON GREGORY

Plaintiffs repeatedly state that a carotid hold was used on Gregory. However, there is no evidence that a carotid hold was used. ¶23 of Exhibit "MMMM".

Apparently, realizing there is no evidence of a carotid hold, Plaintiffs make the alternative argument that "some type of choke hold" was used. However, there is no evidence to support this conclusion.

The statements which Plaintiffs rely upon do not support what Plaintiffs allege. For example, Plaintiffs refer to Exhibit 13 at p. 15 for the position that "some type of choke hold" was used. However, a review of that exhibit reveals the witness stated "carotid, no, not a carotid". Similarly, Plaintiffs rely upon Exhibit 16 at p. 6. However, the witness stated "nah but he wasn't really choking him." Plaintiffs also refer to Exhibit 34. Exhibit 34 reveals that the witness never mentioned any choke hold. Plaintiffs also rely upon Exhibit 14 at p. 14. However, the witness specifically states that the carotid hold was not applied and does not refer to any choke hold.[2]

---

[2]There is no reason for the Officers to deny the use of a choke hold since it would have been an appropriate use of force. ¶13 of "KKKK".

Plaintiffs inaccurately state "Tihada had a choke hold on Richard "as hard as [he] could" with his "weight holding him down. . ." Plaintiffs rely upon Exhibit 46 at 7(c)(3) and (5) and 7(d) for this conclusion. Exhibit "46" is the declaration of their paid expert, Blaricom.[3]

A review of Exhibit "46" demonstrates that Blaricom never stated that Officer Tihada applied a choke hold **as hard as he could.** Therefore, Plaintiffs have misrepresented the facts.

Furthermore, Dr. Manoukian carefully dissected the neck in order to discover any evidence of choking. He found no evidence of choking. ¶11-¶13 of "AAAA".

If someone is choking they are unable to breathe and therefore, unable to speak. It is undisputed that Gregory was yelling during the entire struggle. Exhibits "OO", "III", "RR", ¶24 of "MMMM" ¶27 of "LLLL". Obviously, Gregory's ability to speak is inconsistent with choking. ¶16 of "AAAA", ¶¶14-15 of "DDDD".[4] Therefore, it is undisputed that the officers did not apply a carotid hold or "some type of choke hold".

> **5. IT IS UNDISPUTED THAT OFFICERS DID NOT PUSH GREGORY'S FACE INTO THE COUCH**

---

[3]The facts stated by Blaricom are inaccurate. For the reasons outlined, supra, this Court should disregard Blaricom's declaration.

[4]Officer Among had extensive medical training and was aware that someone talking was not choking. Exhibit "LLLL". Dr. Sugino agrees. Exhibit "TTTT". Even Fuqua, who had taken a CPR class, was aware that someone talking could breathe. Exhibit "UUUU".

Plaintiffs also state that Officer Tihada pushed Gregory's face into the couch.  However, once again the Plaintiffs fail to accurately state the facts.

Plaintiffs rely upon Exhibit 13, at pp. 6-7.  However, a review of this exhibit reveals that Officer Tihada stated that Gregory was on the couch "face down".  Obviously, this does not mean his face was pressed into the couch, rather it simply means Gregory was lying on his stomach, i.e, "face down", as opposed to his back, i.e, "face up".  In fact, Fuqua looked into the room and saw that Gregory was facing towards the door.  Exhibit "VVVV".

It is undisputed that the officers did not have sufficient control over Gregory and he was able to flip over during the struggle.  ¶19 of Exhibit "MMMM".  It is illogical to conclude that the officers lacked sufficient control to prevent Gregory from turning over, yet they were able to apply sufficient pressure to choke or suffocate him.

### 6.  IT IS UNDISPUTED THAT GREGORY DID NOT DIE OF ASPHYXIA

As noted, it is undisputed that Gregory was yelling throughout the struggle.  Talking is inconsistent with choking and asphyxia.

Plaintiffs rely exclusively upon Blaricom for the conclusion that Gregory died of asphyxia.  However, as noted, supra, Blaricom is not qualified to render such an opinion.

Several medical doctors disagree with Blaricom.  Dr. Manoukian states that he does not think Gregory died of asphyxia.  Exhibit "WWWW".  Dr. Chan concluded "neither positional/restraint asphyxia, nor weight force caused respiratory compromise that contributed to

Gregory demise." ¶20 of Exhibit "DDDD". Plaintiffs have offered no admissible evidence to the contrary. Therefore, it is undisputed that Gregory did not die of asphyxia.

### 7. IT IS UNDISPUTED THAT GREGORY DIED OF HEART ATTACK

Dr. Manoukian concluded that Gregory died of a cardiopulmonary arrest, commonly known as a heart attack. ¶10 and ¶21 of Exhibit "AAAA". Autopsy revealed 90% luminal narrowing of the right coronary artery. Page 7 of Exhibit "AAAA". Narrowing greater than 70-75% of a vessel is considered severe. ¶9 of Exhibit "CCCC".

Dr. DiMaio also concludes he died as a result of a cardiac arrhythmia ¶21 of Exhibit "CCCC". As a result of the severe nature of Gregory's heart disease, he would have had a limited life expectancy and would have been prone to sudden death at any time. ¶22 of Exhibit "CCCC". Gregory's heart was also subjected to hypoxic insult in the past. ¶9 of Exhibit "CCCC".

Therefore, it is undisputed that Gregory died of a heart attack.

### B. INADMISSIBLE EVIDENCE PRODUCED BY PLAINTIFFS SHOULD BE DISREGARDED BY THE COURT

Fed.R.Civ.P. 56(e) requires that, ". . . affidavits . . . shall set forth such facts as would be admissible in evidence . . . Sworn or certified copies of all papers. . .referred to in an affidavit shall be attached thereto. . ." It is well established that documents must be admissible. Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003), citing Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002); Whitted v. General Motors Corp., 58 F.3d 1200, 1204 (7th Cir. 1995).

1.    **THE POLICE REPORT**

Exhibits 1, 5, 12, 13, 14, 16, 26 and 36 are apparently statements contained in the police report and are inadmissible. These documents are not authenticated and represent hearsay.

Statements contained within a police report are clearly inadmissible hearsay. *See*, <u>Miller v. Field</u>, 35 F.3d 1088 (6th Cir. 1994); <u>U.S. v. Pazsint</u>, 703 F.2d 420, 424 (9th Cir. 1983); <u>Colvin v. U.S.</u>, 479 F.2d 998, 1003 (9th Cir. 1973). Therefore, Exhibits 1, 5, 12, 13, 14, 16, 26, 36 must be disregarded.[5]

2.    **EXHIBIT 47: SELECTED PAGES FROM "EXCITED DELIRIUM SYNDROME"**

Plaintiffs mistakenly state that this book was published in 1993. However, the book was not available until 2005 with a publication date of 2006, several years after the incident. Exhibit "XXXX".

Plaintiffs attempt to use the book to criticize the Officers's conduct. However, the book is not proper evidence.

Exhibit "47" should disregarded because the prejudicial effect of this evidence clearly outweighs any probative value under Fed.R.Evid. 403, particularly because it was not published until well after the incident.

In addition, no attempt has been made to authenticate Exhibit "47". The book is clearly hearsay since the Plaintiffs are offering the statements contained within it for the truth of the

---

[5]These witnesses have been deposed. It is unclear why Plaintiffs submitted inadmissible evidence.

matter asserted and in addition, Dr. DiMaio is not a police practices expert, but rather a pathologst.[6]

Plaintiffs argue that the officers failed to comply with Exhibit "47".[7] However, a review of the allegations, demonstrate that the Officers' actions were consistent with it. For example, the Officers attempted to keep a safe distance from Gregory and they made simple demands from him. In addition, the Officers spoke calmly to him. As Plaintiffs' note, the book acknowledges that a struggle can not always be avoided. Finally, Dr. DiMaio has stated (in an admissible form) that death has occurred in cases of excited delirium even without physical intervention and individuals suffering from excited delirium die even when EMS personnel are present. ¶13-14 of Exhibit "CCCC".

For all of the above reasons Plaintiffs' Exhibit "47" must be disregarded.

### 3.     THE DECLARATION OF BLARICOM SHOULD BE DISREGARDED

In _Billington v. Smith_, 292 F.3d 1177 (9th Cir. 2002), the Court stated the following:

> . . .[T]he fact that an expert disagrees with the officer's actions does not render the officer's actions unreasonable. . .Together, _Scott_ and _Reynolds_ prevent a plaintiff from avoiding summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was

---

[6]Plaintiffs chose not to depose Dr. DiMaio prior to the deadline.

[7]Plaintiffs argue that Exhibit "47" is evidence that "their police actions... are deficient. . ." However, it is clear the statements made in the book are general statements about police and not the Maui Police Department.

imprudent, inappropriate, or even reckless. . . [footnotes and quotations deleted](emphasis added).

Id. at 1189.

Therefore, the declaration of Blaricom, by itself, does not provide a basis to deny the Defendants' motion. In addition, Blaricom's declaration should be stricken for the following reasons:

### a.   Opinions expressed by Blaricom were not disclosed by the deadline

Plaintiffs were required to disclose their expert opinions on September 15, 2005.   Exhibit "YYYY".   The declaration is dated October 31, 2005.[8]  The declaration is untimely and therefore, must be stricken.

### b.   Some opinions expressed by Blaricom are medical opinions

Blaricom gives the following medical opinions: 1) Gregory was at risk of restraint asphyxia. ¶7 of Exhibit "46"; 2) Gregory displayed symptoms of excited delirium. ¶7(a) of Exhibit "46";[9] 3) persons displaying the symptoms of excited delirium are particularly at risk of restraint asphyxia.  ¶7(b)(1) of Exhibit "46"; and 4) in spite of these specific complaints and warnings or an inability to breathe, the officers continued to use the same

_____

[8]Plaintiffs did disclose a previous affidavit of Blaricom, however, the 10/31/05 declaration includes additional information.

[9]The symptoms outlined by Blaricom are not the same symptoms outlined by Plaintiffs on p. 19.   Compare ¶7(a) to p. 19. Apparently, Blaricom is unaware of the symptoms of excited delirium, yet he opines that the Officers should have been aware of them.   Even some doctors are unaware of the symptoms of excited delirium.   Exhibit "TTTT".

unreasonable force that was causing the decedent's respiratory distress, as they mistakenly believed that the decedent "could breathe because he was talking" and that conclusion is simply "common sense".    ¶7(e) of Exhibit "46".

These are clearly medical opinions. Blaricom acknowledges that he is not a medical doctor and is not qualified to render medical opinions.[10] Exhibit "ZZZZ". Not surprisingly, Blaricom's opinions are inconsistent with the testimony of medical doctors, such as Dr. Manoukian, Dr. Chan, Dr. DiMaio and Dr. Sugino. Since Blaricom is not qualified to render medical opinions these opinions must be stricken.

> c.    **Some opinions expressed by Blaricom are legal conclusions**

"[A]n expert witness cannot give her opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." Hangarter v. Provident Life and Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004), *quoting* Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) (emphasis in original, internal quotations omitted).

Under this rule, an opinion regarding whether the conduct of police officers comports with the Fourth Amendment standard of reasonableness is inadmissible. Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995).

Here, Blaricom gives the following legal opinion: ". . .[i]t is objectively unreasonable excessive force per se to actively

---

[10]Blaricom acknowledges excited delirium is ultimately a medical diagnosis. Exhibit "AAAAA"

interfere with respiration until breathing ceases." ¶7(j) of Exhibit "46". "Excessive force" is a legal term of art, which has a particular meaning under the Fourth Amendment. <u>Graham v. Connor</u>, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). By opining that the defendant officers used excessive force, Blaricom is making a legal conclusion. Such an opinion is inadmissable.

Blaricom has often run afoul of this rule and attempted to offer inadmissible legal conclusions as opinions.[11] Numerous courts have disregarded his opinions on that basis. <u>See</u>, <u>e.g.</u>, <u>Keates v. City of Vancouver</u>, 869 P.2d 88, 92, 73 Wash.App. 257, 265 (Wash.App. 1994); <u>Reeves v. Churchich</u>, 331 F.Supp.2d 1347, 1353 (D.Utah 2004); <u>Volk v. County of Pierce</u>, 2005 WL 2291121 (W.D.Wash. 2005).

In <u>Reeves</u>, the court disregarded Blaricom's opinions stating "It is the court - not plaintiffs' expert - that is responsible for determining whether defendants' conduct violates the Fourth Amendment for purposes of the qualified immunity analysis. <u>Reeves</u>, 331 F.Supp.2d at 1353.

Similarly, in <u>Gonzalez v. Pierce County</u>, 2005 WL 2088367 (W.D.Wash. 2005), the court found Van Blaricom's opinion inadmissible under the <u>Daubert</u> standard:

> **Mr. Van Blaricom's opinion does not meet the standard of evidentiary reliability** in this case. The theory or technique he used to reach his conclusion is unclear, and there is no showing that it has been, or can be, tested. There is no showing that the theory or

---

[11]The last time Blaricom was a police officer was 1968-69. Exhibit "IIIII".

technique has been subjected to peer review or publication, or whether it has a rate of error. There is no showing that the theory or technique is generally accepted in the law enforcement community. . .**Van Blaricom's opinion appears to be legal argument rather than expert analysis. It is not helpful to the court on this matter, and certainly, by itself, does not raise issues of fact** (emphasis added).

Id. at 6-7.

### d.    Blaricom Relies Upon An Incorrect Version Of The Facts

Blaricom has based his opinions on inaccurate facts. For example, Blaricom refers to the autopsy report stating that "restraint or positional considerations may be contributory" to the decedent's death. ¶7(k) of Exhibit "46". However, the autopsy report was clearly referring to medical literature, and was **not** a conclusion in this case. Page 6 of Exhibit "AAAA". This was confirmed by Dr. Manoukian. Exhibit "BBBBB".

Likewise, Blaricom states Officer Tihada applied a carotid restraint and a bar arm choke hold. However, as noted, this is not true.

Blaricom also argues that individuals are capable of speaking when they are unable to breathe. ¶7(f) of Plaintiffs' Exhibit 46.[12] This opinion is contrary to several medical opinions.

Similarly, ¶7(c)(4) states Officer Tihada immediately removed the pen from Gregory's hand. However, Blaricom acknowledges that the pen was grabbed after the struggle began. Exhibit "CCCCC".

---

[12]Blaricom selects one portion of Dr. Manoukian's testimony and ignores the rest in order to reach the desired conclusion.

13

Blaricom admits that once the struggle began the officers had to complete the handcuffing.    Exhibit "DDDDD".

Blaricom also states that Officer Tihada pressed down on the back of Gregory's neck "as hard as I could" with "my weight holding him down".  Blaricom does not indicate the source of this statement and Plaintiffs have failed to put forth any admissible evidence to support it.

Plaintiffs acknowledge that Gregory was able to flip himself over during the struggle.  Therefore, even assuming Officer Tihada did press down as hard he could, the pressure was insufficient to hold Gregory down.

The Court in Kanae v. Hodson, 294 F.Supp.2d 1179 (D.Haw. 2003) noted "Blaricom's report is an interpretation of others' statements. . .Blaricom's conclusion that Hodson was saying he fired first is **questionable**(emphasis added)".  Id. at 1188, see also, Billington v. Smith, 292 F.3d 1177 (9th Cir. 2002),(noting that Blaricom had apparently "**padded his numbers**").  Id. at 1183

Similar to the Kanae and Billington cases, Blaricom has inaccurately stated the facts in this case.  The "facts" as stated by Blaricom must be disregarded because of these inaccuracies and since he does not possess any personal knowledge.

For all of the above reasons, Exhibit "46", Blaricom's declaration should be disregarded.[13]

---

[13]For his own financial gain, Blaricom has provided inappropriate and unsupported opinions which have wasted time and money for all parties and this Court.

14

## C.   **THE OFFICERS ACTED REASONABLY**

As noted, it is undisputed that Gregory posed a significant threat to the safety of the officers.  Gregory refused to put the pen down and defiantly stated "no, why?" as he continued to walk towards the officers.

Plaintiffs argue the Officers should have talked calmly to Gregory in order to avoid a struggle.[14]   However, it is pure speculation as to whether "talking calming" would have prevented a struggle.  Blaricom acknowledges that "there is really no way . . .to know" if it was likely that talking would have prevented a struggle.[15]  Exhibit "DDDDD".  Therefore, the opinion that talking calmly to Gregory would have prevented a struggle, is pure speculation.

Furthermore, an officer has a range of options available to deal with any situation.  Exhibit "SSSS".  Blaricom acknowledges that an officer does not have to use the minimum amount of force necessary.  Exhibit "EEEEE".  Therefore, there is no basis to conclude that the Officers were required to ignore the threat

---

[14]Blaricom believes the officers should have known that Gregory was suffering from excited delirium when Gregory was exhibiting "extreme strength".  This would not have been known until the struggle occurred.  Exhibit "GGGGG".  Officers can not be expected to diagnose individuals with excited delirium particularly when some medical doctors are even unfamiliar with it.  Exhibit "SSSS". Even assuming the officers did diagnose Gregory with excited delirium, their actions would not change because Gregory was a threat to their safety.

[15]Ross Fox, Fuqua and Finazzo all tried talking with Gregory. These efforts failed.  Exhibits "M", "P", "Q", "U".  It is unlikely additional talking would have succeeded.

Gregory posed and first ask "what's bothering you?" as suggested. Exhibit "FFFFF".

The Officers had to take action to protect themselves. They grabbed Gregory to remove the pen and handcuff him. A pen is a considered a weapon. ¶5 of "KKKK" and "PPPP". The Officers repeatedly stated "relax" and "calm down" in a calm manner. Plaintiffs' Exhibit "30". Gregory refused to comply and continued to hold his hands underneath his body.

According to Blaricom, it would have been appropriate for the officers to punch or kick Gregory. Exhibit "HHHHH". However, the officers did not do so. Rather, they utilized a lesser level of force to bring his arms back and to handcuff him. Once the struggle began, the officers had to complete the handcuffing. Therefore, any alleged difficulties in breathing could only be addressed after the handcuffing.

After handcuffing, the Officers immediately stopped using force and sat Gregory up. The Officers acted reasonably and it is difficult to imagine what else they could have done.

In determining reasonableness, Courts must consider ". . .the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003). Officers' safety is viewed as the most important of the three factors. Id. at 964, see also, White v.

16

Pierce County, 797 F.2d 812 (9th Cir. 1986)(finding force used reasonable because individual was resisting); Phillips v. City of Milwaukee, 123 F.3d 586 (7th Cir. 1997)(finding force was objectively reasonable based upon the escalating situation); Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

In Miller, the Court found the officer's actions were reasonable when he ordered a police dog to "bite and hold". The bite caused significant injuries to the suspect.[16] Id. at 961. The crimes at issue were a traffic infraction and a felony. Id. at 964. The court noted that even though the suspect had fled, he still posed a significant danger to the officer because he ". . . defied orders to stop." Id. at 965. The Court also noted that the suspect was "actively resisting". Id. at 965.

The facts in the present case are even more compelling than Miller. Gregory was trespassing and assaulted Finazzo. Similar to Miller, Gregory defied police orders. In addition, Gregory posed an immediate threat to the safety of the officers as he continued to approach with a pen. Gregory was also actively resisting. Therefore, similar to Miller, the government interest was particularly high.

However, the force used by the Officers was minimal. Rather than have a dog attack Gregory, or punch, kick or use a baton, the officers simply grabbed him. Given these facts, only one conclusion can be reached, the Officers acted reasonably.

_____

[16]The skin and muscles sustained significant damage.

D.    <u>DRUMMOND SUPPORTS DEFENDANTS' POSITION</u>

Plaintiffs rely heavily upon <u>Drummond vs. City of Anaheim</u>, 343 F.3d 1052 (9th Cir. 2003).  However, the facts of <u>Drummond</u> support the Defendants' position.

In <u>Drummond</u>, the police were called by a neighbor who was concerned for Drummond's safety.  The officers decided to take Drummond into custody for his own safety.  One officer knocked Drummond to the ground and immediately handcuffed him.  <u>Id</u>. at 1054.

Despite being handcuffed, the officers continued to put weight on Drummond.  Approximately twenty minutes after Drummond was taken down, Drummond was placed in a hobble restraint.  <u>Id</u>. at 1055.

The Court noted that there was no underlying crime at issue and Drummond was not resisting the officers.  <u>Id</u>. at 1057-1058.

The Court concluded:

> Here, **some force was surely justified in restraining Drummond** so that he could not injure himself or the arresting officers. **However, after he was handcuffed** and lying on the ground, the **force** that the officers then **applied was clearly constitutionally excessive** when compared to minimal amount that was warranted (emphasis added).

<u>Id</u>. at 1059.

Clearly, the facts in the present case are quite different. The police were called because Gregory was refusing to leave the a studio and had become violent.  Therefore, unlike <u>Drummond</u>, there were crimes at issue, i.e., trespass and assault.

In addition, unlike the <u>Drummond</u> case, Gregory was resisting police and never obeyed their repeated requests to "drop the pen",

"relax" and "stop resisting". If Gregory had complied, no struggle would have occurred.

Most importantly, the Court in <u>Drummond</u> specifically acknowledged that force was warranted in order to handcuff Drummond. However, it was the force used **after** the handcuffing that was found to be excessive.

It is undisputed that the officers ceased all use of force as soon as Gregory was handcuffed. ¶21 of "MMMM". In addition, the Officers immediately began attempts to save Gregory's life.[17]

Therefore, the <u>Drummond</u> case is clearly distinguishable and supports the Defendants' position.

For all of the above reasons, Defendants respectfully request that this Court grant their motion for summary judgment.

DATED: Wailuku, Maui, December 30, 2005.

By    _____
LAUREEN L. MARTIN
Attorney for County Defendants

---

[17]Despite minimal force used and admirable attempts at saving Gregory's life by running quickly to obtain the AED and performing CPR (even after Gregory vomited) the officers find that they are named individually as Defendants.

19