```
 1                UNITED STATE DISTRICT COURT
 2                    DISTRICT OF HAWAII
 3
 4   VALERIE GREGORY, et al.,   )
                                )
 5           Plaintiffs,        )
                                )   Civil
 6       vs.                    )   No. 04-00516 SPK/KSC
                                )
 7   COUNTY OF MAUI, MAUI       )
     POLICE DEPARTMENT, et al., )
 8                              )
             Defendants,        )
 9                              )
     _____)
10
11
12
13
14
                         DEPOSITION OF
15
                       D.P. VAN BLARICOM
16
                     PALO ALTO, CALIFORNIA
17
                       NOVEMBER 29, 2005
18
19
20
21   ATKINSON-BAKER, INC.
     CERTIFIED COURT REPORTERS
22   (800) 288-3376
     www.depo.com
23
24   REPORTED BY: JANE H. STULLER, CSR No. 7223, RPR
25   FILE NO.: 9F09180
```

CERTIFIED COPY

1

EXHIBIT "HHHH"

1    A.  No.  Those two I did entirely on my own.

2    Q.  Do you --

3    A.  My legal adviser reviewed them for contents,

4  but that was just to make sure that they were legal.

5    Q.  Were there any national use of force policies

6  in 1975 that you looked at?

7    A.  I don't believe there were.

8    Q.  If someone is actively resisting, can you use

9  OC spray on them?

10   A.  Yes.

11   Q.  If someone is holding their hands rigid or

12 under their body, can you punch them?

13   A.  Yeah.  You can use you stun blows in order to

14 get them to extract their arms and their hands from

15 under their body.

16   Q.  Can you punch them in the head, or does it

17 matter where you punch them?

18   A.  You shouldn't punch them in the head.  That's

19 generally prohibited.  And the problem with punches to

20 the head is they may be lethal.  And if you hit the

21 person in the face with your fist, you've got -- all it

22 does is it accelerates the fight and you're never going

23 to knock them out.  And you're likely to draw blood, and

24 you're likely to either cut your hands or break your

25 fist, which are two other things you don't want to do.

1    Q.  Okay.  So I just want to make sure we're clear.
2  If someone is holding their -- they're lying down on the
3  floor, holding their hands underneath their body, and
4  they -- and an officer is trying to handcuff them, the
5  officer can punch that individual, but shouldn't punch
6  them in the head; is that accurate?
7    A.  Shouldn't punch him in the head.
8    Q.  So you agree with that statement?
9    A.  Yes, ma'am.  Use stun blows to the --
10   Q.  And the -- I'm sorry.  The purpose of the
11 punches is what?
12   A.  Is to cause the person -- well, if you strike
13 them properly, they're arm will go numb and they won't
14 be able to control it.
15   Q.  So that the officer can handcuff that
16 individual; correct?
17   A.  Sure.
18       (Discussion off the record.)
19 BY MS. MARTIN:
20   Q.  If an individual has their hands underneath
21 their body and they're lying on the floor and the
22 officer is trying to handcuff that individual, could the
23 officer hit them with their knee, like kick them, in
24 order to be a stun blow as well?
25   A.  You can use your knee to stun, sure.  Most

```
 1  effective way to do it is with your -- with your fist,
 2  baton.  Both with a strike or to lever their arm out
 3  from underneath them.
 4       Q.  Either one of those would be acceptable for an
 5  officer to handcuff an individual who's holding their
 6  arms underneath their body?
 7       A.  Yes, ma'am.
 8       Q.  When you were a police officer, were you
 9  allowed to shoot any fleeing felon?
10       A.  Yeah, we were.  That's the rule I changed in
11  '75.  I did -- I wrote Tennessee versus Garner --
12  G-A-R-N-E-R -- ten years before.
13       Q.  All right.  So you're saying that the use of
14  force policy you wrote in 1975 prohibited the shooting
15  of a fleeing felon; is that correct?
16       A.  Yes, ma'am.
17       Q.  And that was ten years before the United States
18  Supreme Court required that?
19       A.  Exactly.
20       Q.  Okay.
21       A.  In fact, the last year I was chief is when they
22  enacted it, and Seattle's legal advisor and I were
23  assigned by this Washington Association of Sheriffs and
24  Police Chiefs to travel around the state explaining to
25  chiefs and sheriffs why that was the new rule.
```

24